UNITED STATES of America,
Plaintiff–Appellant,

v.

Floyd Maurice WILSON, a/k/a Chinky,
Defendant–Appellee.

UNITED STATES of America,
Plaintiff–Appellee,

v.

Floyd Maurice WILSON, a/k/a Chinky,
Defendant–Appellant.

Nos. 96–4579, 96–4585.

United States Court of Appeals,
Fourth Circuit.

Argued April 11, 1997.

Decided May 22, 1997.

**ARGUED**: Michael Francis Joseph, Assistant United States Attorney, Greensboro, North Carolina, for Appellant. Robert H. Edmunds, Jr., Stern, Graham & Klepfer, Greensboro, North Carolina, for Appellee. **ON BRIEF**: Walter C. Holton, Jr., United States Attorney, Greensboro, North Carolina, for Appellant.

Before HALL, WILKINS, and NIEMEYER, Circuit Judges.

Vacated and remanded with instructions by published opinion. Judge WILKINS wrote the opinion, in which Judge K.K. HALL and Judge NIEMEYER joined.

## OPINION

WILKINS, Circuit Judge:

Floyd Maurice Wilson pled guilty to conspiracy to possess with the intent to distribute cocaine base, *see* 21 U.S.C.A. § 846 (West Supp.1997) and distribution of cocaine base, *see* 21 U.S.C.A. § 841(a)(1) (West 1981). During the subsequent sentencing hearing, the district court determined that Wilson had

failed to carry his burden of demonstrating that firearms he admitted to possessing were not possessed in connection with the conspiracy. Consequently, the court ruled that he was not entitled to a reduction in his offense level pursuant to *U.S. Sentencing Guidelines Manual* § 2D1.1(b)(4) (1995). The district court did depart downward from the resulting guideline range, reasoning that Wilson's family responsibilities were extraordinary. *See* U.S.S.G. § 5H1.6, p.s. Although we find adequate support for the finding of the district court that Wilson failed to carry his burden of proof with respect to his possession of a firearm in connection with the conspiracy, we conclude that the district court abused its discretion in departing downward from the applicable guideline range. Accordingly, we remand for resentencing consistent with this decision.

## I.

The presentence report prepared following Wilson's guilty plea indicated that Wilson admitted that he had sold crack cocaine on behalf of a coconspirator three to four times per week over a one-year period and estimated that he distributed approximately 3.2 grams of crack cocaine on each occasion. Based on this information, the presentence report recommended that Wilson be held accountable for between 150 and 500 grams of crack cocaine, providing a base offense level of 34. *See* U.S.S.G. § 2D1.1(a)(3), (c)(3). The presentence report recommended an upward adjustment of two levels to this offense level because a firearm was possessed during the offense, *see* U.S.S.G. § 2D1.1(b)(1), and a downward adjustment of two levels for Wilson's acceptance of responsibility, *see* U.S.S.G. § 3E1.1(a). Combined with Wilson's Criminal History Category of I, the adjusted offense level of 34 resulted in a recommended guideline range of 151 to 188 months imprisonment.

The presentence report, however, identified a potential factor warranting downward departure. The report indicated that as a child Wilson "had insufferable demands placed on him as a result of drug-induced parental neglect" and acknowledged that "[b]oth [Wilson] and his younger brother were forced to fulfill their basic subsistence needs by street entrepreneurship (hustling money) beginning during the developmental age range of ten to thirteen." J.A. 36. The report explained that after becoming a father at age 14, Wilson "demonstrated a degree of responsibility . . . by refusing to allow the child to become a ward of 'the system' " and "assum[ing] an admirable, consistent, and responsible parenting role, something he as a child never experienced." *Id.* The presentence report suggested that considering these circumstances, the court might wish to contemplate a departure based on U.S.S.G. § 5H1.6, p.s. (Family Ties and Responsibilities, and Community Ties).

Wilson did not dispute the recommended finding that a firearm was possessed under § 2D1.1(b)(1) because there was significant evidence that his coconspirators had possessed firearms. *See* U.S.S.G. § 1B1.3(a)(1)(B) (explaining that "in the case of jointly undertaken criminal activity," specific adjustments to offense levels are to be based on "all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity"). Wilson, however, maintained that he had never personally possessed a firearm in connection with the offense and thus that he was entitled to a two-level reduction in his offense level pursuant to U.S.S.G. § 2D1.1(b)(4).

During the sentencing hearing, Wilson admitted that he possessed two firearms during the time period in which he was selling crack cocaine on behalf of the conspiracy. But, he asserted that neither of these weapons had been possessed in connection with the drug transactions. Rather, he maintained, the weapons were kept at his home and utilized for protection. According to Wilson's testimony, the first of these weapons was a .22 caliber pistol that he purchased in 1994, just prior to the beginning of the alleged conspiracy, and that he owned for only three weeks. Approximately one week subsequent to the sale of this firearm, Wilson purchased a .380 caliber pistol, a semi-automatic weapon, from an associate. He possessed this firearm until November or December 1995, when he sold it to purchase Christmas gifts for his children. And, for several months during this

period, Wilson permitted an acquaintance, who managed a restaurant, to borrow the weapon for protection. Wilson admitted on cross-examination that he brought proceeds from his drug sales to his home where the weapons were located.

After hearing this testimony, the district court found that Wilson had failed to carry his burden of proving that the firearms he admitted possessing were not carried in connection with the conspiracy. The court indicated that Wilson's proffered justification for possessing the firearms—protection—lacked credibility, noting inconsistencies in Wilson's testimony, including that Wilson exchanged the first firearm for a second, more deadly one soon after its purchase and that Wilson loaned the firearm to an acquaintance for a time during the period that he purportedly needed protection. The court explained that Wilson's purchase of the firearm contemporaneously with the beginning of his drug activities with the conspiracy, his retention of a firearm throughout the duration of the criminal activities, and his access to the weapons for protection of the proceeds of his drug sales convinced it that Wilson had not carried his burden of demonstrating that the firearms were not possessed in connection with the drug activity. Thus, the district court refused to apply the reduction in § 2D1.1(b)(4).

With respect to the departure, the Government maintained that the recommendation of the presentence report for a departure improperly focused on Wilson's underprivileged childhood and lack of parental guidance and amounted to a recommendation for a departure for Wilson's lack of guidance as a youth, a factor on which departure is forbidden by

U.S.S.G. § 5H1.12, p.s. The district court rejected the Government's position, expressly recognizing that departure on the basis of lack of youthful guidance was prohibited, but reasoning that despite Wilson's abysmal upbringing, he had shown extraordinary attention to his own responsibility as a parent. The court explained:

> I am saying that ordinarily I do not find the difficulty of an early age to be sufficient grounds to depart.... So, I then move beyond that, and I say here is a [teenage boy] who has no business understanding the responsibility of fatherhood, but undertaking the responsibility of fatherhood and trying to do something about it. And that is sort of singular in itself. But what makes it more singular in itself is the fact that he didn't have any reason in his background to appreciate what a good father would be or what a good parent would be.

J.A. 53.

Based on this reasoning, the district court departed downward by two levels to an offense level of 32, resulting in a guideline range of 121 to 151 months, and sentenced Wilson to 130 months imprisonment.

## II.

We first consider Wilson's contention that the district court erred in refusing to adjust his offense level downward by two levels pursuant to U.S.S.G. § 2D1.1(b)(4). That provision states:

> If the defendant meets the criteria set forth in subdivisions (1)-(5) of § 5C1.2[1] (Limitation on Applicability of Statutory

---

1. The criteria set forth in the referenced guideline, U.S.S.G. § 5C1.2, are:
   (1) the defendant does not have more than 1 criminal history point, as determined under the sentencing guidelines;
   (2) the defendant did not use violence or credible threats of violence or possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense;
   (3) the offense did not result in death or serious bodily injury to any person;
   (4) the defendant was not an organizer, leader, manager, or supervisor of others in the offense, as determined under the sentencing guidelines

and was not engaged in a continuing criminal enterprise, as defined in 21 U.S.C. § 848; and
   (5) not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan, but the fact that the defendant has no relevant or useful other information to provide or that the Government is already aware of the information shall not preclude a determination by the court that the defendant has complied with this requirement.

Minimum Sentences in Certain Cases) and the offense level determined above is level 26 or greater, decrease by 2 levels.

U.S.S.G. § 2D1.1(b)(4). It is undisputed that the only criterion set forth in § 5C1.2 that Wilson arguably failed to satisfy is the requirement that "the defendant did not use violence or credible threat of violence or possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense." U.S.S.G. § 5C1.2(2).

■ As an initial matter, the Government asserts that we need not affirm the refusal of the district court to apply § 2D1.1(b)(4) on the basis that Wilson personally possessed the firearm in connection with the offense within the meaning of § 5C1.2(2) because the fact that Wilson's coconspirators possessed the weapon is sufficient. We disagree. The commentary to § 5C1.2 makes clear that for purposes of § 5C1.2(2), the term "defendant" "limits the accountability of the defendant to his own conduct and conduct that he aided or abetted, counseled, commanded, induced, procured, or willfully caused." U.S.S.G. § 5C1.2, comment. (n.4). And, the other courts of appeals that have addressed this issue agree that for limited purposes of applying this provision, possession of a firearm by a coconspirator is not attributed to the defendant. *See In re Sealed Case (Sentencing Guidelines' "Safety Valve")*, 105 F.3d 1460, 1462–63 (D.C.Cir.1997); *United States v. Wilson*, 105 F.3d 219, 222 (5th Cir.1997) (per curiam).

■ Wilson argues that he did not possess a firearm in connection with the offense and that therefore he was entitled to the two-level downward adjustment set forth in § 2D1.1(b)(4). The defendant bears the burden of proving the existence of the five prerequisites set forth in § 5C1.2. *See United States v. Beltran–Ortiz*, 91 F.3d 665, 669 (4th Cir.1996). And, the factual findings of the district court with respect to whether a defendant has satisfied the criteria of § 5C1.2 may not be reversed absent clear error. *See, e.g., United States v. Cruz*, 106 F.3d 1553, 1557 (11th Cir.1997). The district court found that Wilson had failed to carry his burden of showing that he had not possessed

the firearm in connection with the offense, rejecting Wilson's justification for the firearms he admittedly possessed during the time frame in which the offense occurred and noting that Wilson stored the proceeds of his drug sales in his home where the firearm was possessed. The district judge, who was able to assess the credibility of Wilson's explanation for possessing the weapons, found that the testimony was not believable. Further, the court pointed to circumstantial evidence consistent with the conclusion that Wilson possessed the firearm in connection with the conspiracy. On this record, we cannot say that the finding of the district court was clearly erroneous.

### III.

■ We next consider the Government's cross appeal asserting that the district court erred in departing downward from the applicable guideline range. A district court must impose a sentence within the range that results from the proper application of the guidelines "unless the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described." 18 U.S.C.A. § 3553(b) (West Supp.1997). When analyzing whether a potential basis for departure was adequately considered by the Commission in formulating the guidelines, a sentencing court must focus on whether the factor is taken into account by the guidelines, policy statements, or commentary and whether it is encompassed within the heartland of situations to which the applicable guideline was intended to apply. *See Koon v. United States,* — U.S. —, —, 116 S.Ct. 2035, 2044, 135 L.Ed.2d 392 (1996); *see also* U.S.S.G. Ch. 1, Pt. A, intro. comment. 4(b). In performing this analysis, it is essential to recognize that " '[t]he Commission intend[ed] the sentencing courts to treat each guideline as carving out a "heartland," a set of typical cases embodying the conduct that each guideline describes' " and to consider as potential bases for departure factors that take the case outside the heartland of the applica-

ble guideline. *Koon,* —— U.S. at ——, 116 S.Ct. at 2044 (quoting U.S.S.G. Ch. 1, Pt. A, intro. comment. 4(b)). Accordingly, circumstances within the heartland of conduct encompassed by the applicable guideline are deemed to have been adequately considered by the Commission while conduct falling outside the heartland is not. Thus, the determinative inquiry is whether the individual facts that the district court is considering are taken into account in the heartland of situations encompassed within the applicable guideline.

In order to ascertain whether a factor under consideration is an appropriate basis for departure, a sentencing court must determine whether the potential basis for departure was forbidden, encouraged, discouraged, or unmentioned by the Commission. *See id. at* ——, 116 S.Ct. at 2045. If a factor is one on which the Commission has forbidden reliance, a departure premised upon that factor is never permissible. *See id.* All other factors potentially may provide a basis for departure under appropriate circumstances. *See id.* at ——, 116 S.Ct. at 2050; U.S.S.G. Ch. 1, Pt. A, intro. comment. 4(b). But, if the factor is one upon which the Commission discourages departure, a district court properly may depart only if it finds that the factor exists to such an uncommon degree that it is outside the heartland of circumstances embraced by the relevant guideline. *See Koon,* —— U.S. at ——, 116 S.Ct. at 2045; *United States v. Brock,* 108 F.3d 31, 34–35 (4th Cir.1997). And, once the district court has determined that a factor exists that was not adequately taken into account by the Commission in formulating the guidelines, the district court must judge whether the factor is such that a sentence outside the applicable guideline range "should result." 18 U.S.C.A. § 3553(b). We review the decision to depart for an abuse of discretion. In doing so, we recognize that substantial deference is due to the departure decisions of district courts because their determination of whether certain aspects of a case are unusual enough to take it outside the heartland of situations encompassed within the applicable guideline is essentially a factual inquiry, necessarily involving a comparison of the facts of the situation under consideration with the usual case to which the guideline in question

applies. *See Koon,* —— U.S. at —— - ——, 116 S.Ct. at 2046–47.

The Government contends that the district court abused its discretion in departing from the guideline range applicable to Wilson. In support of its position, the Government points to U.S.S.G. § 5H1.12, p.s., which provides in pertinent part:

> Lack of guidance as a youth and similar circumstances indicating a disadvantaged upbringing are not relevant grounds for imposing a sentence outside the applicable guideline range.

The sentencing court obviously based its decision to depart upon Wilson's disadvantaged childhood, the Government argues, and this factor has been forbidden as a basis for departure.

Because § 5H1.12, p.s. sets forth the Commission's determination that departure based upon a defendant's disadvantaged upbringing is not an appropriate ground for departure, a district court necessarily commits error in departing on that basis. And, we agree with the Government that a fair review of the proceedings before the district court demonstrates that Wilson's deprived background was a motivating force behind the decision of the district court to depart. Nevertheless, the district court expressly disavowed reliance on Wilson's lack of guidance as a youth and disadvantaged upbringing. Instead, it attempted to ground its departure on a different factor, and therefore, we consider whether the departure may be justified on the announced basis.

Recognizing that § 5H1.12, p.s. prohibited a departure based on Wilson's disadvantaged upbringing, the district court found that the way in which Wilson rose above his upbringing to take responsibility for his own children constituted extraordinary family ties, making departure appropriate under U.S.S.G. § 5H1.6, p.s. Section 5H1.6, p.s. provides:

> Family ties and responsibilities and community ties are not ordinarily relevant in determining whether a sentence should be outside the applicable guideline range.

Family responsibilities that are complied with may be relevant to the determination of the amount of restitution or fine. Because

the Commission discouraged departure on the basis of family ties and responsibilities, departure pursuant to § 5H1.6, p.s. is permitted only upon a finding that the defendant's family ties or responsibilities are extraordinary. *See Koon,* —— U.S. at ——, 116 S.Ct. at 2045; *Brock,* 108 F.3d at 34–35.

The district court deemed that Wilson's attention to his children was extraordinary. The record before the district court indicates only that at the time the presentence report was prepared, Wilson, age 21, was cohabitating with a 16–year–old woman and the couple had a three-month-old child. Wilson also had fathered three children, ages six, four, and three, who resided with their mother. Aside from the impermissible basis of Wilson's disadvantaged upbringing, and its observation that many defendants failed to take any responsibility for their children whatsoever, the district court offered no reasons for concluding that Wilson's situation was such that his family responsibilities could be considered extraordinary. Indeed, this court has held improper departures based on § 5H1.6, p.s. under circumstances much more compelling than Wilson's. *See United States v. Rybicki,* 96 F.3d 754, 759 (4th Cir. 1996) (holding that district court abused its discretion in departing under § 5H1.6, p.s. based on defendant's responsibilities for his wife and son, both of whom had medical problems); *United States v. Maddox,* 48 F.3d 791, 799 (4th Cir.1995) (reversing downward departure for extraordinary family ties where the district court found that the defendant provided invaluable care for his severely mentally retarded sister and his mother and was "crucial to the structure and stability of his family"); *United States v. Bell,* 974 F.2d 537, 538–39 (4th Cir.1992) (disapproving departure based on § 5H1.6, p.s. because defendant's responsibilities in a traditional two-parent family were even less extraordinary than those of a defendant who was a single, custodial parent and despite finding of the district court "that an extended period of incarceration would lead to the destruction of the family"); *United States v. Brand,* 907 F.2d 31, 33 (4th Cir.1990) (holding that the separation of a mother, who was the sole custodial parent, from two children was not extraordinary); *United States v. Goff,* 907 F.2d 1441, 1446 (4th Cir.1990) (disapproving decision of district court to depart based on § 5H1.6, p.s. where defendant was single mother responsible for three young children); *see also United States v. Weddle,* 30 F.3d 532, 541 (4th Cir.1994) (recognizing appropriateness of refusal by district court to depart on the basis of extraordinary family ties although defendant was single, custodial parent); *United States v. Dyce,* 91 F.3d 1462, 1467–68 (D.C.Cir.) (collecting cases from other circuits holding departure pursuant to § 5H1.6, p.s. was erroneous under circumstances where the defendants had much greater responsibilities than did Wilson), *cert. denied,* —— U.S. ——, 117 S.Ct. 533, 136 L.Ed.2d 418 (1996). Accordingly, while we appreciate the position taken by the able trial judge, even assuming that Wilson's attention to and responsibility for his children was greater than the majority of similarly situated defendants, we hold that the finding that Wilson's situation constituted extraordinary family responsibility was an abuse of discretion. Consequently, a sentence outside the applicable guideline range is not one that "should result." 18 U.S.C.A. § 3553(b).

## IV.

For the reasons set forth above, we affirm the decision of the district court that Wilson was not entitled to a reduction in offense level pursuant to U.S.S.G. § 2D1.1(b)(4). However, because we conclude that the district court abused its discretion in departing downward pursuant to U.S.S.G. § 5H1.6, p.s., we vacate Wilson's sentence and remand for resentencing consistent with this opinion.

*VACATED AND REMANDED WITH INSTRUCTIONS*