In the
United States Court of Appeals
For the Seventh Circuit

No. 00-1058

United States of America,

Plaintiff-Appellee,

v.

Jeffrey Harris,

Defendant-Appellant.

Appeal from the United States District Court
for the Southern District of Indiana, Indianapolis Division.
No. 97 CR 63--Larry J. McKinney, Judge.

Argued June 13, 2000--Decided October 25, 2000

Before Coffey, Ripple and Kanne, Circuit Judges.

Kanne, Circuit Judge. Jeffrey Harris pleaded guilty to one count of conspiracy to possess with intent to distribute cocaine and cocaine base, 21 U.S.C. sec.sec. 846, 841(a)(1), and the district court adjusted his base offense level upward two levels pursuant to U.S.S.G. sec. 2D1.1(b)(1) for possessing a firearm during the course of his offense. Harris appeals, arguing that the district court should not have applied sec. 2D1.1(b)(1) because he never personally or constructively possessed a firearm, and played a relatively small role in the conspiracy, and that the district court should have adjusted his offense level downward two levels under the "safety valve" provision, U.S.S.G. sec. 5C1.2 and U.S.S.G. sec. 2D1.1(b)(6). We affirm.

I.

From October 1993 to mid-1996, Harris "worked the table"--he cooked, cut up, and packaged kilogram quantities of crack cocaine into smaller portions for distribution--as part of a large narcotics distribution ring in Illinois and Indiana. He initially worked the table at a drug house on the south side of Chicago managed by Kirk Reynolds, one of the primary conspirators. In early 1995, Harris followed the operation to Indianapolis, and worked the table at two drug

houses that were equipped with sophisticated hidden compartments containing large caches of firearms. He was continuously in the presence of co-conspirators who routinely and openly carried firearms, and once while he was present at one of the Indianapolis houses several co-conspirators exchanged gunfire with other individuals. Harris also once helped deliver a large quantity of cocaine from California, delivered large quantities of cocaine to buyers and other drug houses, occasionally collected drug sales proceeds from street dealers, and was responsible for distributing cloned cellular telephones to members of the operation. His involvement in the conspiracy ceased in 1996 when he moved away from Indianapolis.

A federal grand jury indicted Harris along with 13 other members of the operation in May 1997. Harris was charged only with one count of conspiracy to possess with intent to distribute cocaine and cocaine base, and agreed to plead guilty to the charge in May 1998. In the written plea agreement, Harris and the government stipulated that his base offense level was 38 under U.S.S.G. sec. 2D1.1 (a), and that he should receive a three-level downward adjustment for acceptance of responsibility under U.S.S.G. sec. 3E1.1. But the parties could not agree whether Harris possessed a firearm in connection with the offense under U.S.S.G. sec. 2D1.1(b)(1), and included the following stipulation in the plea agreement:

[I]f the Court determines that the defendant did not possess a firearm in connection with the offense, the parties agree that Harris meets the remaining requirements of U.S.S.G. sec. 5C1.2. In the event that the defendant meets said requirements, he would be entitled to a two level reduction, pursuant to U.S.S.G. sec. 2D1.1(b)(4)./1

At sentencing, the district court adopted the findings in the Presentence Investigation Report (PSR), which recommended the upward adjustment, and found that Harris "possessed" firearms within the meaning of sec. 2D1.1(b)(1) because he regularly worked in a place where firearms were present, had access to the hidden storage compartments in the Indianapolis drug houses, and was continuously surrounded by co-conspirators who openly possessed and used firearms. The court reasoned that the presence of firearms was foreseeable to Harris. With no further oral or written objections to the PSR, the district court imposed a 240-month sentence.

II.

Section 2D1.1(b)(1) requires a two-level upward adjustment if "a dangerous weapon (including a firearm) was possessed." U.S.S.G. sec. 2D1.1(b)(1); United States v. Zehm, 217 F.3d 506, 516 (7th Cir. 2000). This specific offense characteristic applies if weapons were present, unless it is "clearly improbable" that they were connected to the offense. U.S.S.G. sec. 2D1.1, comment. (n.3); Zehm, 217 F.3d at 516; United States v. Taylor, 111 F.3d 56, 59 (7th Cir. 1997). The government bears the initial burden of establishing by a preponderance of the evidence that the defendant possessed a firearm, but the burden then shifts to the defendant to prove that it was clearly improbable that the weapon was used in connection with the underlying offense. United States v. Berkey, 161 F.3d 1099, 1102 (7th Cir. 1998). A defendant "possesses" firearms under sec. 2D1.1(b)(1) if he actually or constructively possessed a gun, Zehm, 217 F.3d at 516; United States v. Griffin, 150 F.3d 778, 786 (7th Cir. 1998); United States v. Wetwattana, 94 F.3d 280, 283 (7th Cir. 1996), or if co-conspirators possessed firearms in furtherance of jointly undertaken criminal activity so long as their possession was reasonably foreseeable to the defendant, U.S.S.G. sec. 1B1.3(a)(1)(B) & comment. (n.2); United States v. Brack, 188 F.3d 748, 763-64 (7th Cir. 1999); United States v. Washington, 184 F.3d 653, 659 (7th Cir. 1999); Taylor, 111 F.3d at 59. We review the district court's conclusion that Harris possessed a gun under sec. 2D1.1(b)(1) for clear error. See Zehm, 217 F.3d at 516.

In disputing application of sec. 2D1.1(b)(1), Harris argues that he did not actually or constructively possess a weapon. Although he concedes that firearms were present in the drug houses where he worked the table, he contends that the presence of the weapons proves only mere proximity, not constructive possession. The government conceded that Harris never personally carried a gun, but asserts that Harris had constructive possession of the firearms carried by his co-conspirators, or those discovered in the drug houses. The government points out that Harris was an intimate member of a conspiracy whose members engaged in "firearm activity," was present during a gun battle, was constantly in the presence of co-conspirators carrying weapons, had ready access to the weapons caches, and delivered large quantities of drugs to locations where armed individuals had been hired for security. There is no question that firearms were present during this offense, but to show constructive possession the government had to prove that Harris demonstrated ownership, dominion, authority, or control of at least one of the caches of weapons, see id.; United States

v. Richardson, 208 F.3d 626, 632 (7th Cir. 2000), and the only suggestion in this record that Harris exercised such possession comes entirely from the mouth of the government's attorney. Statements of counsel are not evidence, see United States v. Fetlow, 21 F.3d 243, 248 (8th Cir. 1994), and our reading of the PSR and the indictment, along with the testimony from Harris's change-of-plea hearing, reveals nothing but Harris's proximity to the firearms, which is insufficient to constitute constructive possession, see United States v. Windom, 19 F.3d 1190, 1200-01 (7th Cir. 1994).

   But a defendant can also possess a firearm for purposes of sec. 2D1.1(b)(1) under co-conspirator liability principles, see Brack, 188 F.3d at 763-64; Berkey, 161 F.3d at 1102, and the district court's application of sec. 2D1.1(b)(1) under such a theory is supported by the record. The district court adopted the findings of fact in the PSR, which references information contained in the indictment. Count 1 charged Harris with the same drug-distribution conspiracy as all of his co-defendants. Counts 15-19 charged co-conspirators Morris Carr, Terrell Carter, and Michael Harris with various substantive weapons offenses, and Michael Harris was convicted of both Count 1 and the weapons charges./2 Additionally, the PSR recounts numerous instances in which firearms were possessed by co-conspirators James Anthony, Toymiko Bradley, Morris Carr, Terrell Carter, Michael Harris, and Kirk Reynolds, all of whom pleaded guilty to, or were convicted under, Count 1 of the indictment. Harris asserts, however, that his involvement in the charged conspiracy was significantly less than that of his co-conspirators, and when queried on this point at oral argument, stated that he was involved only in a "conspiracy to work the table," and that he simply did not participate in the more serious criminal activity of his co-conspirators. It is well-settled, however, that a participant in joint criminal activity can be liable for the foreseeable criminal acts of another in furtherance of the joint criminal activity. See Pinkerton v. United States, 328 U.S. 640, 646-48 (1946); see also United States v. Missick, 875 F.2d 1294, 1301-02 (7th Cir. 1989) (co-conspirators may be subject to enhanced sentences under Pinkerton liability theory). Furthermore, Harris made no written or verbal objections to the factual findings contained in or incorporated by reference into the PSR--findings that establish that Harris did more than merely work the table--and cannot now challenge those facts on appeal. See United States v. Staples, 202 F.3d 992, 995 (7th Cir. 2000). The district court did not clearly err in finding that Harris possessed firearms during the

offense for purposes of sec. 2D1.1(b)(1).

   Harris next contends that he merited a two-level downward adjustment under the "safety valve" provision, U.S.S.G. sec. 5C1.2. Under this section and sec. 2D1.1(b)(6), sentencing courts can adjust an offense level of 26 or greater downward two levels if the defendant can demonstrate that (1) he is a first time offender; (2) he did not possess or use a firearm in connection with the offense; (3) the offense did not result in death or serious bodily injury to any person; (4) he was not an organizer or leader of the criminal activity; and (5) he made a good faith effort to cooperate with the government. See 18 U.S.C. sec. 3553(f); U.S.S.G. sec. 5C1.2. Whether co-conspirator liability is a basis for determining possession of a firearm under sec. 5C1.2 is an issue that we have never addressed, but the majority of circuits to reach the issue have ruled that it is not./3 Harris, however, did not raise this issue or object to the district court's failure to apply sec. 5C1.2 and sec. 2D1.1 (b)(6) at sentencing. He acknowledges in his brief that he may have failed to preserve this issue for appeal, but argues that we should determine otherwise and reach the merits of his argument, or that we should review the district court's failure to apply sec. 5C1.2 for plain error. The government believes that Harris forfeited the issue and that we may review it for plain error, but contends that the district court did not commit plain error. Harris failed to preserve this issue for appeal, but we believe that he waived, rather than forfeited, the argument, and therefore we cannot reach its merits.

   Waiver and forfeiture are related doctrines; waiver occurs when a defendant intentionally relinquishes or abandons a known right, whereas forfeiture occurs when a defendant fails to timely assert his rights. Staples, 202 F.3d at 998 (citing United States v. Olano, 507 U.S. 725, 730-34 (1993)). We review forfeited issues for plain error, see id., but we cannot review waived issues at all because a valid waiver leaves no error for us to correct on appeal, United States v. Davis, 121 F.3d 335, 337-38 (7th Cir. 1997). Here, the parties stipulated that Harris would be eligible for safety valve relief if the district court determined that he did not possess a firearm in the course of the offense. But the district court concluded otherwise, the Sentencing Guidelines recommendations in the PSR made no mention of sec. 5C1.2 or sec. 2D1.1(b)(6), and, when queried by the district court, both Harris and trial counsel affirmatively stated that they had no objections to the PSR apart from the sec. 2D1.1(b)(1)

firearm possession adjustment. Thus, despite having raised the sec. 5C1.2 question during plea negotiations, Harris extinguished the issue by affirmatively declining to object at sentencing. See id.; United States v. Redding, 104 F.3d 96, 99 (7th Cir. 1996).

Finally, Harris asserts that his trial attorney was constitutionally ineffective by failing to argue for a downward adjustment under sec. 5C1.2 and sec. 2D1.1(b)(6). To prevail, he must demonstrate that counsel's performance fell below an objective standard of reasonableness and that counsel's errors were prejudicial. Strickland v. Washington, 466 U.S. 668, 687 (1984). The availability of safety valve relief for defendants such as Harris is an open question in this circuit, and it was possible that Harris's offense level could have been lowered by two had trial counsel raised the issue at sentencing. But we have generally discouraged ineffective assistance of counsel claims on direct appeal because we presume counsel's performance to fall within a wide range of reasonable professional assistance and our inquiry is necessarily limited to the facts in the trial record. See United States v. Godwin, 202 F.3d 969, 973 (7th Cir. 2000). Trial records are typically not sufficiently developed for us to conclude whether counsel's performance was deficient, United States v. Johnson-Wilder, 29 F.3d 1100, 1104 (7th Cir. 1994), and this case is no exception: on this record we cannot say that counsel's failure to request a downward adjustment under the safety valve was not a strategic decision. Counsel argued for the minimum sentence within the guideline range rather than asserting that the district court should have applied the safety valve provision, which may or may not have applied to Harris, and counsel was entitled to be selective, especially where the pursuit of other avenues may have risked opening the door to the inclusion of unfavorable facts in the record. See United States v. Davenport, 986 F.2d 1047, 1050 (7th Cir. 1993).

Accordingly, we Affirm Jeffrey Harris's sentence.

/1 Section 2D1.1(b)(4) was later renumbered sec. 2D1.1(b)(6). See U.S.S.G. App. C, amendment 555 (Nov. 1997).

/2 We recently affirmed Michael Harris's convictions in United States v. Thornton, 197 F.3d 241 (7th Cir. 1999).

/3 See United States v. Clavijo, 165 F.3d 1341, 1343 (11th Cir. 1999); United States v. Wilson, 114 F.3d 429, 432 (4th Cir. 1997); In re Sealed Case,

105 F.3d 1460, 1462-63 (D.C. Cir. 1997); United States v. Wilson, 105 F.3d 219, 222 (5th Cir. 1997); but see United States v. Hallum, 103 F.3d 87, 89-90 (10th Cir. 1996) (participants in joint criminal activity can be held responsible for the foreseeable possession of firearms in furtherance of the conspiracy by other participants for purposes of sec. 5C1.2).

   RIPPLE, Circuit Judge, dissenting.  This case presents an issue of first impression in this court: whether a defendant who has properly received a two-level enhancement under sec. 2D1.1(b)(1) of the Sentencing Guidelines may also obtain a two-level departure under sec. 5C1.2, the Guidelines' "safety valve" provision. Because I would answer the question in the affirmative, and because Mr. Harris meets the requirements for the two-level departure, I respectfully dissent.

   There is no doubt that Mr. Harris possessed a firearm within the broad meaning of Sentencing Guideline sec. 2D1.1 (b)(1). This section provides for a two-level enhancement if a dangerous weapon was possessed in connection with a drug trafficking offense. Application Note Three to Guideline sec. 2D1.1 states that the adjustment should be applied "if the weapon was present, unless it is clearly improbable that the weapon was connected to the offense." U.S.S.G. sec. 2D1.1 comment. (n.3) (1998); see also United States v. Chandler, 12 F.3d 1427, 1435 (7th Cir. 1994). Section 2D1.1(b)(1) does not require actual possession of the weapon by the defendant. See United States v. Covarrubias, 65 F.3d 1362, 1370 (7th Cir. 1995). A defendant is said to have possessed a firearm under sec. 2D1.1(b)(1) if he had actual or constructive possession of the weapon, see United States v. Wetwattana, 94 F.3d 280, 283 (7th Cir. 1996), or if co-conspirators possessed firearms in furtherance of jointly undertaken criminal activity, and their possession was reasonably foreseeable to the defendant, see U.S.S.G. sec. 1B1.3(a)(1)(B) & comment. (n.2) (1998); United States v. Taylor, 111 F.3d 56, 59 (7th Cir. 1997); United States v. Berchiolly, 67 F.3d 634, 640 (7th Cir. 1995).

   There is sufficient evidence that Mr. Harris' co-conspirators possessed and used firearms in furtherance of the conspiracy, and that such

possession was reasonably foreseeable to Mr. Harris. In fact, Mr. Harris was frequently in the presence of armed co-conspirators and, on at least one occasion, Mr. Harris was present when several members of the charged conspiracy exchanged gunfire with other individuals. Given these facts, the district court properly concluded that Mr. Harris possessed a firearm within the meaning of sec. 2D1.1(b)(1). Not only was it reasonably foreseeable to Mr. Harris that co-conspirators were possessing firearms in furtherance of the conspiracy, but it was also within his actual knowledge.

Mr. Harris, nevertheless, asks this court to conclude that he is still eligible to receive the safety valve reduction because it was his co-conspirators, not he, who possessed a firearm. Ordinarily, we review the district court's determination that a defendant is ineligible to receive a reduction under sec. 5C1.2 for clear error. See United States v. Williams, 202 F.3d 959, 964 (7th Cir. 2000). However, the failure to raise an issue before the district court results in a forfeiture of that argument unless the defendant can demonstrate plain error. See United States v. Davis, 121 F.3d 335 (7th Cir. 1997). Because Mr. Harris failed to assert his eligibility for the safety valve reduction at the sentencing hearing, he must demonstrate plain error in order to prevail on this issue./1 This court has stated that such an error must be "conspicuous, at least in hindsight" and egregious enough that it would amount to a miscarriage of justice if allowed to stand. United States v. Marvin, 135 F.3d 1129, 1135 (7th Cir. 1998).

Section 5C1.2 provides for a two-level departure if a defendant can show that (1) he does not have more than one criminal history point; (2) he did not use violence, possess a firearm, or induce another to possess a firearm; (3) his offense did not result in death or serious bodily injury to any person; (4) he was not an organizer, leader, manager, or supervisor of others in the offense; and (5) he has complied with the Government's demands for information. See U.S.S.G. sec. 5C1.2 (1998). The only disputed issue is whether Mr. Harris possessed a firearm within the meaning of sec. 5C1.2(2), so as to preclude his eligibility for the two-level departure.

Until now, this court has not had the occasion to decide whether a defendant found to have possessed a firearm for purposes of sec. 2D1.1(b)(1) under a co-conspirator liability theory may be eligible to receive a safety valve adjustment. The majority of circuits that have addressed this issue, however, have held that

defendants remain eligible for a downward departure under sec. 5C1.2 so long as they are not found to have actually or constructively possessed weapons for purposes of sec. 2D1.1(b)(1). See United States v. Clavijo, 165 F.3d 1341, 1343 (11th Cir. 1999) (holding that possession of a firearm under the safety valve does not include reasonably foreseeable possession of a firearm by co-conspirators); United States v. Wilson, 114 F.3d 429, 432 (4th Cir. 1997) (holding that possession of a firearm by co-conspirators is not attributable to the defendant under the safety valve); In re Sealed Case, 105 F.3d 1460, 1462 (D.C. Cir. 1997) (holding that the doctrine of co-conspirator liability cannot establish possession under the safety valve); United States v. Wilson, 105 F.3d 219, 222 (5th Cir. 1997) (holding that only the defendant's conduct and not the conduct of his co-conspirators is relevant in determining eligibility for the safety valve); but see United States v. Hallum, 103 F.3d 87, 89 (10th Cir. 1996) (holding that the defendant can be held liable for the foreseeable acts of his co-conspirators under the safety valve). The majority view comports with both the language of the Guidelines and the application notes.

Section 5C1.2(2) states that a defendant is eligible for treatment under that subsection only if "the defendant did not use violence or credible threats of violence or possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense." U.S.S.G. sec. 5C1.2(2) (1998). In accord, Application Note Four to Guideline sec. 5C1.2 states that the term "defendant," as used in subdivision (2), "limits the accountability of the defendant to his own conduct and conduct that he aided or abetted, counseled, commanded, induced, procured, or willfully caused." U.S.S.G. sec. 5C1.2, comment. (n.4) (1998). The Supreme Court has held that guideline commentary that interprets or explains a guideline is controlling unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, the guideline. See Stinson v. United States, 508 U.S. 36, 42-45 (1993); see also United States v. Bonanno, 146 F.3d 502, 509 n.8 (7th Cir. 1998); United States v. Rubin, 999 F.2d 194, 197 (7th Cir. 1993). Because the Sentencing Commission drafts the Guidelines as well as the commentary interpreting them, courts should presume that the interpretations in the commentary "represent the most accurate indications of how the Commission deems that the guidelines should be applied to be consistent with the Guidelines Manual as a whole as well as the authorizing statute." Stinson, 508 U.S. at 45. Because Note Four is not inconsistent with,

or a plainly erroneous reading of, Guideline sec. 5C1.2(2), it should be given controlling weight.

The language of Note Four mirrors the wording of sec. 1B1.3(a)(1)(A), one of the two principal provisions defining the scope of relevant conduct for which defendants are held liable under the Guidelines. See U.S.S.G. sec. 1B1.3 (a)(1)(A) (1998). Under sec. 1B1.3(a)(1)(A), the defendant is held liable only for those acts and omissions that he personally "committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused." Significantly, Note Four does not mention sec. 1B1.3(a)(1)(B), the other principal provision defining the scope of relevant conduct, which holds a defendant liable for "all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity." U.S.S.G. sec. 1B1.3(a) (1)(B) (1998). Given the plain language of sec. 1B1.3(a) and the specificity of Note Four to Guideline sec. 5C1.2, this omission could hardly have been inadvertent. Section 1B1.3(a) provides that relevant conduct shall be determined by sec. 1B1.3(a)(1)(A) and sec. 1B1.3(a)(1)(B) "unless otherwise specified." Applying the principle that the specific supersedes the general, I read Note Four to Guideline sec. 5C1.2, which addresses only the element of weapon possession, to restrict the meaning of relevant conduct for which defendants are otherwise held liable under the Sentencing Guidelines.

In fact, Note Four, by its own terms, expressly "limits the accountability of the defendant to his own conduct and conduct that he aided or abetted, counseled, commanded, induced, procured, or willfully caused." U.S.S.G. sec. 5C1.2 comment. (n.4). If co-conspirator liability were incorporated into the weapon possession element, then this limitation would be rendered meaningless. Furthermore, Note Four is entirely consistent with the plain language of Guideline sec. 5C1.2(2). A defendant is eligible for treatment under this subsection as long as he did not "possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense." See U.S.S.G. sec. 5C1.2(2). If possession under this subsection encompassed foreseeable possession by a co-defendant, then the inclusion of "induce another participant to [possess]" would be superfluous.

Given the measure of authority that the Supreme Court has accorded the Guidelines and their commentary, I am unwilling to conclude that this phrase was included in sec. 5C1.2(2) arbitrarily. I am no more willing to conclude that the omission of co-conspirator liability language

from Note Four was inadvertent. Instead, I am convinced that sec. 5C1.2(2) and its commentary are consistent with the safety valve's basic purpose: "to spare certain minor participants in drug trafficking enterprises from mandatory minimum sentences when imposition of the mandatory sentences would be disproportionate to the defendants' culpability." In re Sealed Case, 105 F.3d at 1462-63; see also H.R.Rep. No. 103-460, at 5 (concluding that "the integrity and effectiveness of controlled substance mandatory minimums could in fact be strengthened if a limited 'safety valve' from the operation of these penalties was created and made applicable to the least culpable offenders").

Because Mr. Harris did not actually or constructively possess a weapon in connection with the conspiracy, he should not be precluded from receiving the benefits of the safety valve. All parties agree that Mr. Harris never actually possessed a firearm during the course of the conspiracy or directed anyone else to carry a firearm. However, the Government argues that Mr. Harris should be precluded from receiving the benefit of the safety valve because he had constructive possession of the firearms. To prove that Mr. Harris constructively possessed a dangerous weapon, the Government had to show that he demonstrated ownership, dominion, authority, or control over the weapons that were discovered in the drug houses. See United States v. Richardson, 208 F.3d 626, 632 (7th Cir. 2000); United States v. Hernandez, 13 F.3d 248, 252 (7th Cir. 1994); United States v. Garrett, 903 F.2d 1105, 1110 (7th Cir. 1990) (stating that constructive possession applies when "a person does not have actual possession but instead knowingly has the power and the intention at a given time to exercise dominion and control over an object, either directly or through others"). The record before the court simply cannot sustain a finding that Mr. Harris constructively possessed a firearm.

Although Mr. Harris was frequently in the presence of armed co-conspirators, and firearms were routinely stored in the houses where he converted and repackaged cocaine into cocaine base, this court has held that constructive possession requires more than a defendant's presence in the location of contraband. See United States v. Windom, 19 F.3d 1190, 1200-01 (7th Cir. 1994). Undoubtedly, Mr. Harris' proximity to the firearms is relevant to his ability to exercise dominion and control over the weapons. Control need not be exclusive; more than one individual can exercise dominion and control over contraband. See Richardson, 208 F.3d at 632; United States v. Hunte, 196 F.3d 687, 693 (7th

Cir. 1999); United States v. Tirrell, 120 F.3d 670, 675 (7th Cir. 1997). Nevertheless, establishing dominion and control by a particular defendant requires more than proximity. See Windom, 19 F.3d at 1200-01; accord United States v. Morris, 977 F.2d 617, 619-20 (D.C. Cir. 1992). The critical issue is whether Mr. Harris, at any time, had the intent and the authority to exercise control over the firearms. See United States v. Manzella, 791 F.2d 1263, 1266 (7th Cir. 1986).

In a related, yet slightly different context, this court has suggested that a defendant only has dominion or control over contraband when he has the recognized authority within his "criminal milieu" to possess and determine the disposition of the contraband. See United States v. Ortega, 44 F.3d 505, 507 (7th Cir. 1995); Windom, 19 F.3d at 1200 n.21; Manzella, 791 F.2d at 1266 (stating that the defendant "must have the right (not the legal right, but the recognized authority in his criminal milieu) to possess them, as the owner of a safe deposit box has legal possession of the contents even though the bank has actual custody"). Although courts have characterized the legal fiction of constructive possession in various ways, this characterization is most instructive because it makes concrete what is otherwise evasive, and more accurately depicts the reality of the criminal setting.

Understanding constructive possession in this way, there is insufficient evidence that Mr. Harris personally possessed the firearms. Nothing in the PSR, the indictment, or testimony from Mr. Harris' plea hearing suggests that he had dominion or control over the weapons at any time. Although Mr. Harris occasionally delivered cocaine or collected payments, it appears that his primary role in the conspiracy was to convert and repackage cocaine into cocaine base. As blameworthy as these actions were, Mr. Harris does not appear to have played an authoritative role in the conspiracy. The facts do not establish that Mr. Harris had the authority within his criminal milieu to possess and determine the disposition of the weapons that were discovered in the drug houses. The only finding that the record clearly supports is that Mr. Harris possessed firearms under a theory of co-conspirator liability. Mr. Harris' co-defendants possessed firearms in furtherance of jointly undertaken criminal activity, and such possession was reasonably foreseeable to Mr. Harris. See U.S.S.G. sec. 1B1.3(a)(1)(B) & comment. (n.2).

For the foregoing reasons, I conclude that in determining a defendant's eligibility for the

safety valve, sec. 5C1.2(2) only allows for consideration of the defendant's conduct, not the conduct of his co-conspirators. Accordingly, I believe that Mr. Harris did not possess a firearm within the meaning of sec. 5C1.2(2) and therefore remains eligible for a two-level reduction under the safety valve. Because application of sec. 5C1.2 is mandatory, the district court's failure to sentence Mr. Harris under the safety valve provision was plainly erroneous. Therefore, I respectfully dissent.

/1 The majority characterizes Mr. Harris' failure to assert his eligibility for the safety valve adjustment as a waiver of the argument rather than a forfeiture. See United States v. Olano, 507 U.S. 725, 732-34 (1993). This characterization--which even the Government does not support--permits the majority to avoid reaching the merits on the ground that matters that have been waived, and not merely forfeited, are not subject to plain error scrutiny. See United States v. Penny, 60 F.3d 1257, 1261 (7th Cir. 1995).

In my view, the Government's characterization of the situation as involving forfeiture and not waiver is correct. The record hardly reflects an "intentional relinquishment or abandonment of a known right" to the safety valve adjustment. Olano, 507 U.S. at 733 (quoting Johnson v. Zerbst, 304 U.S. 458, 464 (1938)); see also Davis, 121 F.3d at 337-38.