UNITED STATES of America,
Plaintiff–Appellee,

v.

Mark A. LANE, Defendant–Appellant.

No. 02–1642.

United States Court of Appeals,
Seventh Circuit.

Submitted Oct. 1, 2002.*

Decided Dec. 2, 2002.

Before COFFEY, RIPPLE, and KANNE, Circuit Judges.

*ORDER*

Mark Lane ("Lane") pleaded guilty to one count of conspiracy to possess with intent to distribute and to distribute methamphetamine, in violation of 21 U.S.C. §§ 846, 841(a)(1), and one count of conspiracy to launder monetary instruments in violation of 18 U.S.C. § 1956(h), (a)(1)(A)(i), without the benefit of a plea agreement. The district court sentenced Lane to a 360–month prison term on the drug count and a concurrent 240–month term on the money laundering count, followed by five years of supervised release. Lane contests the district court's imposition of a three-level upward adjustment under U.S.S.G. § 3B1.1(b) for his aggravating role in the offense. We affirm the sentence imposed by the district court.

Lane admitted the following facts, which are taken from his plea colloquy and the

* Appellant Lane filed a motion to waive oral argument, which we granted. Thus, the appeal is submitted on the briefs and the record. *See* Fed. R.App. P. 34(a)(2).

presence investigation report ("PSR"). From June 1999 through May 2000, Lane received methamphetamine from David Merritt approximately every two weeks, obtaining around 200 pounds during that period. Lane then switched suppliers, buying drugs from one of Merritt's associates, Jerome Davis. Until his arrest in September 2000, Lane received approximately 35 pounds of methamphetamine from Davis. Merritt and Davis both fronted Lane drugs on consignment. After taking a portion of the drugs to support his own addiction, Lane cut the drugs and resold or fronted them to at least seven other individuals.

In September 1999, Mr. Lane recruited Elizabeth Hill ("Hill"), a coworker, to sell methamphetamine for him. Special Agent Michael Kress of the Drug Enforcement Administration testified that Lane had provided Hill with transportation to and from work, and it was during these trips that Lane recruited Hill to sell drugs for him. (P. Tr. 34.) Kress also testified that Lane established the time and location for each drug delivery to Hill as well as the time and location for each cash payment from Hill. (*Id.*) Lane fronted drugs to Hill from September 1999 until his arrest the following year, except for a period in December 1999 when Lane ceased supplying Hill because she fell behind on her payments.

In February 2000, Lane recruited Brad Mattingly ("Mattingly") as a drug dealer. Mattingly, who had previously been obtaining methamphetamine from Hill, approached Lane in early 2000 to ask for money in order to post bond for an incarcerated friend. (P. Tr. 33.) Once this relationship had been established, Lane asked Mattingly to sell drugs for him directly, effectively eliminating Hill's role as intermediary. (*Id.*) As in his dealings with Hill, Lane established both the time and the location for each drug delivery to Mat-

tingly, as well as the time and the location for each drug payment from Mattingly. (P. Tr. 34.) Thus, with respect to both Hill and Mattingly, Lane determined where the drug exchanges would occur as well as making all the arrangements, controlling when and where he collected money for the drugs they sold.

Lane fronted an ounce weekly to Hill from September 1999 to January 2000, and nine ounces per week from January 2000 until Hill's arrest in August 2000. From February 2000 until his arrest in September 2000, Lane provided methamphetamine to Mattingly in increasing quantities. Law enforcement officers arrested Hill and Mattingly in August 2000, and both identified Lane as their supplier. Shortly thereafter, officers arrested Lane. A grand jury later returned an indictment charging him with the drug and money laundering offenses.

Lane pleaded guilty to the indictment. At sentencing, represented by counsel, he conceded the factual accuracy of the PSR while objecting to certain of its recommendations—*i.e.*, calculation of the base offense level, a two-level increase for possessing a firearm, *see* U.S.S.G. § 2D1.1(b)(1), a three-level upward adjustment for assaulting a federal law enforcement officer while attempting to flee, *see* U.S.S.G. § 3A1.2(b), and a three-level upward adjustment for obstruction of justice, *see* U.S.S.G. § 3C1.1. In short, Lane contested every pertinent offense-level calculation in the PSR *except* the three-level upward adjustment for his role in the offense. The court considered each objection, and also gave Lane another opportunity to object to its findings before imposing his sentence, which Lane refused. Relying on Agent Kress' testimony and the facts in the PSR (which Lane did not dispute), the court found that Lane had "set the parameters for the

drug deals and the money collection. He supplied methamphetamine to be dealt by others and recruited sellers to deal methamphetamine" and thus acted as a "manager or supervisor" in the criminal activity.

■ We cannot understand, given the facts that we have recited above, Lane's contention on appeal that he was not a "manager or supervisor" because he neither directed nor controlled Hill, Mattingly, or any other individual. He also makes much of the factors listed in U.S.S.G. § 3B1.1, Application Note 4, in support of his claim. We disagree, as we believe the record and the PSR bear ample proof that Lane engaged in the type of activity that our previous line of cases has held to be worthy of sentencing enhancement under U.S.S.G. § 3B1.1. *See, e.g., United States v. Vargas,* 16 F.3d 155, 160 (7th Cir.1994) (noting that a § 3B1.1 increase would have been appropriate if the defendant "had been principally responsible for arranging the logistics of cocaine deliveries or payments"); *United States v. Brown,* 944 F.2d 1377, 1381 (7th Cir.1991) (declining to uphold an enhancement where the government failed to demonstrate that the defendant "exercised any control over the customers to whom he sold drugs, or recruited dealers to work for him"); *United States v. Gracia,* 272 F.3d 866, 877 (7th Cir.2001) (holding that a sentencing increase for managing or supervising was justified even if the district court found that the defendant had control over only one participant).

We also point out that we have never held that all of the factors listed in U.S.S.G. § 3B1.1, Application Note 4 are required to establish that a defendant is qualified for an increase under that section—*i.e.,* "the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others." *See also United States v. Lemmons,* 230 F.3d 263, 267 (7th Cir.2000). Finally, we point out that any claim Lane makes that the sentencing judge made insufficient findings about his managerial role will be of no avail, given this court's ruling in *United States v. Hall,* 109 F.3d 1227, 1234 (7th Cir.1997) ("Where the defendant objects but does not offer any evidence of the PSR's inaccuracy, the rule that the court must make findings as to disputed issued can be satisfied by reference to the PSR.").

■ Even assuming *arguendo* that the record did not support a finding that Lane acted as a "manager or supervisor," we would affirm Lane's sentence on the grounds that Lane waived any objection to the increase under U.S.S.G. § 3B1.1(b). Waiver occurs when a defendant "intentionally relinquishes a known right." *See United States v. Staples,* 202 F.3d 992, 995 (7th Cir.2000) (citations omitted). Unlike forfeiture, which is unintentional and preserves review over plain errors, waiver extinguishes the error and precludes appellate review. *See United States v. Harris,* 230 F.3d 1054, 1058–59 (7th Cir.2000) ("[W]e cannot review waived issues at all because a valid waiver leaves no error for us to correct on appeal.") (citations omitted).

Prior to sentencing, Lane objected to three PSR recommendations, but made no mention of any objection to the proposed increase under § 3B1.1(b). The court considered each of Lane's objections to three different enhancements—granting one (for an alleged assault of a federal officer) and overruling two (one for firearm possession and one for perjury). The court then

asked Lane's attorney if he had *any other objection* to the PSR before sentencing was imposed. Lane's attorney responded, "No, sir." We have repeatedly held that declining to object at sentencing or answering "no" when asked if there is any objection constitutes waiver in the strict sense of the term. *See, e.g., United States v. Martinez–Jimenez,* 294 F.3d 921, 923 (7th Cir.2002) (concluding that when a defendant stated he had no objection to the court's categorization of his offense level, the defendant had "plainly communicated an intention to relinquish and abandon any arguments related to his offense level calculation"); *United States v. Richardson,* 238 F.3d 837, 841 (7th Cir.2001) (holding that answering "no" to the question of whether there was any objection to a two-level sentencing enhancement was a waiver in the strict sense of the term, thereby barring further judicial consideration); *Harris,* 230 F.3d at 1059 (finding that by affirmatively declining to object at sentencing, defendant extinguished sentencing issue); *United States v. Redding,* 104 F.3d 96, 99 (7th Cir.1996) (holding that statements in transcript evidencing acceptance of sentencing calculations constituted waiver) (citation omitted).

Therefore, even if the record does not bear sufficient proof that Lane acted in a managerial or supervisory role, Lane waived any challenge to the district court's calculation of this aggravating role in the offense by failing to object to the PSR, and appellate review is precluded. Accordingly, the judgment of the district court is

AFFIRMED.