In re SEALED CASE (SENTENCING GUIDELINES' "SAFETY VALVE").

No. 95–3206.

United States Court of Appeals, District of Columbia Circuit.

Argued Nov. 1, 1996.

Decided Feb. 7, 1997.

Before EDWARDS, Chief Judge, SILBERMAN and TATEL, Circuit Judges.

Opinion for the Court filed by Circuit Judge TATEL.

TATEL, Circuit Judge:

Relying on the Federal Sentencing Guidelines' "safety valve" provision, appellant sought a departure from the mandatory minimum sentence for the drug trafficking offense to which he had pled guilty. The district court refused to apply the safety valve because it found, based on either co-conspirator liability or constructive possession, that appellant had possessed a firearm in connection with the offense. Holding that co-conspirator liability cannot establish possession under the safety valve and concluding that the record contains insufficient evidence to support the district court's finding of constructive possession, we vacate appellant's sentence and remand for resentencing pursuant to the safety valve.

I

Acting to prevent the mandatory minimum sentences for certain drug trafficking offenses from causing the "least culpable offenders [to] receive the same sentences as their relatively more culpable counterparts," H.R.REP. No.103–460, at 4 (1994), Congress added the so-called "safety valve" provision to the Sentencing Guidelines in 1994, Mandatory Minimum Sentencing Reform Act of 1994, Pub.L. No.103–322, tit. VIII, 108 Stat. 1796, 1895–96 (codified at 18 U.S.C. § 3553(f)). The safety valve requires district courts to disregard these statutory minimum sentences and instead to sentence pursuant to the Guidelines when a defendant satisfies five indicators of reduced culpability: 1) the defendant has no more than one criminal history point; 2) the defendant "did not use violence or credible threats of violence or possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense"; 3) the offense did not result in death or serious bodily injury; 4) the defendant was not a leader or organizer of the offense; and 5) the defendant has fully cooperated with the government. U.S.S.G. § 5C1.2 (1995); 18 U.S.C.

§ 3553(f)(2) (1994). The second indicator—possession of a firearm—is the focus of this case.

Count One of a three-count information charged appellant and his brother with conspiracy to distribute and to possess with intent to distribute 500 grams or more of cocaine in violation of 21 U.S.C. § 846. Counts Two and Three charged appellant's brother with using and carrying a firearm during a drug trafficking crime in violation of 18 U.S.C. § 924(c) and with possession of an unregistered firearm in violation of 26 U.S.C. § 5861(d). Appellant pled guilty to the first count. His brother pled guilty to all three counts. Because appellant and his brother cooperated with the government in the investigation of other suspects, the records of this case are sealed to protect the brothers' identities.

The drug conspiracy count to which appellant pled guilty rested on four sales to an undercover government agent that took place over the course of two and a half months. The district court rejected the safety valve because of the presence of a gun at the fourth sale. That sale occurred outside a fast food restaurant. Appellant's brother, sitting in his car parked near the restaurant, waited for the buyer, i.e., the undercover agent. When the agent arrived, the brother made a telephone call. Shortly thereafter, another person delivered to the brother approximately a kilogram of cocaine. The brother in turn gave the cocaine to the undercover agent in exchange for approximately $21,000 in cash. During the entire transaction, appellant remained in the restaurant. Immediately after the sale, law enforcement officers arrested appellant and his brother. Searching the brother's car, the officers found a revolver under the driver's seat.

If the district court had sentenced appellant under the Sentencing Guidelines, he would have faced a prison term in the range of 46 to 57 months. Conspiracy to distribute 500 grams or more of cocaine, however, carries a statutory minimum prison sentence of five years, i.e., 60 months. 21 U.S.C. §§ 841(b)(1)(B)(ii), 846 (1994). Relying on the safety valve, appellant sought sentencing

under the Guidelines rather than for the statutory minimum. The Government conceded that appellant met four of the safety valve's five criteria, but contended that he failed to qualify for the safety valve because he had possessed a firearm during the crime. Agreeing with the Government, the district court refused to apply the safety valve and sentenced appellant to the statutory minimum of five years.

## II

■ The sole issue on appeal is the propriety of the district court's refusal to sentence pursuant to the safety valve. We review the district court's legal conclusions *de novo*, its factual findings under the clearly erroneous standard, and its application of the Guidelines to the facts with due deference. *United States v. Kim*, 23 F.3d 513, 517 (D.C.Cir. 1994); *see* 18 U.S.C. § 3742(e) (1994).

At the sentencing hearing, the district judge explained the basis for her finding that appellant had possessed the gun found in his brother's car as follows:

> ... Let me just say this with respect to the legal issues that have been argued to me. I conclude, based upon what has been presented to me, that [appellant] is not entitled to the safety valve. I mean, you know, just common sense tells me that he and his brother, who have gone up from a few gram deliveries to a kilogram delivery, fully recognized how much drugs they had with them, they recognized the profit they would make from those drugs, and the two of them conspired to sell those drugs, and the two of them, as far as I'm concerned, are both responsible for having a gun to protect the drugs and/or the money that they would get.
>
> Now, you say they didn't bring the drugs with them. That's true. But they knew they were dealing illegally, they knew that somebody was going to come and bring the drugs, they didn't know who they were dealing with, and they stood prepared to protect those drugs or to protect the income from those drugs, and I— there's just no question in my mind but he and his brother conspired together to do this, and they were using this gun to pro-

tect themselves, to protect the drugs, protect the money, and as such, ... I find that he is not entitled to the safety valve.

Tr. (Dec. 13, 1995) at 33–34. The judge's statement is consistent with two possible rationales for finding that appellant possessed the gun discovered in his brother's car: co-conspirator liability and constructive possession. In our view, neither approach is appropriate in this case—the first as a matter of law, the second because of insufficient evidence.

■ Under the doctrine of co-conspirator liability, conspirators are responsible for the reasonably foreseeable acts of fellow conspirators in furtherance of the conspiracy. *See, e.g., Pinkerton v. United States*, 328 U.S. 640, 646–48, 66 S.Ct. 1180, 1183–85, 90 L.Ed. 1489 (1946); *cf.* U.S.S.G. § 1B1.3(a)(1)(B) (1995). Although well accepted in substantive criminal law, co-conspirator liability cannot establish possession under the Guidelines' safety valve, as the Government seems to have acknowledged by virtually dropping this argument on appeal. The safety valve's application note four provides that, "[c]onsistent with § 1B1.3 (Relevant Conduct), the term 'defendant,' as used in subdivision (2), limits the accountability of the defendant to his own conduct and conduct that he aided or abetted, counseled, commanded, induced, procured, or willfully caused." *Id.* § 5C1.2, comment., n.4. This language parallels the wording of one of the two principal provisions defining the scope of relevant conduct for which defendants are held liable under the Guidelines: "all acts and omissions [they] committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused." *Id.* § 1B1.3(a)(1)(A). Notably absent from application note four, however, is any mention of the other principal provision defining the scope of relevant conduct, which holds defendants liable for "all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity." *Id.* § 1B1.3(a)(1)(B). Omission of this co-conspirator liability language, we think, can hardly have been inadvertent. Its omission, moreover, is consistent with the safety valve's basic purpose: to spare certain minor

participants in drug trafficking enterprises from mandatory minimum sentences when imposition of the mandatory sentences would be disproportionate to the defendants' culpability. *See* H.R.REP. No. 103–460, at 2–4. Given the great likelihood that at least one member of a drug distribution conspiracy will possess a firearm, *see, e.g., United States v. Payne*, 805 F.2d 1062, 1065 (D.C.Cir.1986) (noting courts' widespread recognition that guns are common "tools of the trade" for drug dealers), incorporating co-conspirator liability into the safety valve's weapon possession element would render the safety valve virtually useless.

We recognize the tension between application note four's definition of "defendant," U.S.S.G. § 5C1.2, comment., n.4 (1995), and application note three's broad definition of "offense," which includes "all relevant conduct," *id.* § 5C1.2, comment., n.3; *cf. id.* § 1B1.1, comment., n.1 (*l*). *Cf. United States v. Hallum*, 103 F.3d 87 (10th Cir.1996). Applying the principle that the specific trumps the general, however, we read application note four, which addresses only the weapon possession element, as restricting the meaning of application note three, which applies to several elements of the safety valve. Indeed, application note four describes the weapon possession element's use of the term "defendant" as "limiting" defendants' liability, U.S.S.G. § 5C1.2, comment., n.4 (1995), a limitation that would have no function if application note three incorporated co-conspirator liability into the weapon possession element. We also think it significant that, by comparison to the provision enhancing drug sentences for gun possession, which uses the passive voice—requiring enhancement if a firearm "was possessed," *id.* § 2D1.1(b)(1)— and omits any reference to the defendant, the safety valve speaks in the active voice, requiring that "the defendant" must do the possessing, *id.* § 5C1.2(2). And most fundamentally, we think our interpretation of the safety valve is faithful to its purpose.

██ Having abandoned co-conspirator liability as a basis for establishing weapon possession under the safety valve, the Government argues that the district court nevertheless properly refused to apply the safety valve because appellant constructively possessed the gun found under the seat of his brother's car. A defendant constructively possesses an object when he is "knowingly in a position to, or ha[s] the right to exercise 'dominion and control' over" the object, *e.g., United States v. Jenkins*, 981 F.2d 1281, 1283 (D.C.Cir.1992) (citation and internal quotation marks omitted), either personally or through others, *see, e.g., United States v. Harrison*, 931 F.2d 65, 71 (D.C.Cir.), *cert. denied*, 502 U.S. 953, 112 S.Ct. 408, 116 L.Ed.2d 356 (1991); *cf. County Ct. of Ulster Cty. v. Allen*, 442 U.S. 140, 161, 164, 99 S.Ct. 2213, 2226–27, 2228, 60 L.Ed.2d 777 (1979) (discussing similar definition under New York law). In most constructive possession cases, the defendant's knowledge of the contraband flows from its being in plain view at the site of the defendant's arrest. *See, e.g., United States v. Walker*, 99 F.3d 439, 441 (D.C.Cir. 1996); *United States v. Dunn*, 846 F.2d 761, 764 (D.C.Cir.1988). Although the defendant's proximity to the contraband is relevant to his ability to exercise dominion and control over the contraband, we have repeatedly held that establishing dominion and control requires more than just proximity. *See, e.g., United States v. Morris*, 977 F.2d 617, 619–20 (D.C.Cir.1992); *United States v. Williams*, 952 F.2d 418, 420 (D.C.Cir.1991), *cert. denied*, 506 U.S. 850, 113 S.Ct. 148, 121 L.Ed.2d 99 (1992). " '[T]here must be some action, some word, or some conduct that links the individual to the [contraband] and indicates that he had some stake in [it], some power over [it].' " *United States v. Thorne*, 997 F.2d 1504, 1510 (D.C.Cir.), *cert. denied*, 510 U.S. 999, 114 S.Ct. 568, 126 L.Ed.2d 467 (1993) (quoting *United States v. Pardo*, 636 F.2d 535, 549 (D.C.Cir.1980)). Additional factors linking the defendant to the contraband and establishing his ability to exercise dominion and control over it include " 'proof of motive, a gesture implying control, evasive conduct, or a statement indicating involvement in an enterprise.' " *Morris*, 977 F.2d at 620 (quoting *United States v. Gibbs*, 904 F.2d 52, 56 (D.C.Cir.1990)).

In this case, the district court could reasonably find the first element of constructive

possession—that appellant knew the gun was in his brother's car. In a statement to law enforcement officers shortly after his arrest, appellant expressly acknowledged that "[t]here was a gun in [my brother's] car." Gov't's Mem. in Aid of Sentencing (Nov. 9, 1995), Attach. A, *reprinted in* Appellant's Appendix at 77. Claiming that he did not learn about the gun until after his arrest, appellant argues that his admission, read in the context of his entire statement, fails to demonstrate that he knew the gun was present in his brother's car at the time of the fourth cocaine sale. Although appellant's interpretation is certainly plausible, his statement may also be read quite naturally as recounting the events and circumstances of the fourth sale, thus suggesting that he did know about the gun at the time of the sale. Facing a statement with two plausible interpretations, the district court did not clearly err by choosing one interpretation over the other and concluding that appellant knew the gun was in his brother's car at the time of the sale. *See, e.g., Anderson v. City of Bessemer City*, 470 U.S. 564, 574, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985) ("Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous.").

We have a different view of the district court's conclusion that appellant was in a position to exercise dominion and control over the gun, the second element of constructive possession. To begin with, one of the usual factors establishing the ability to exercise dominion and control—the defendant's proximity to the contraband—is missing in this case. Appellant remained in the restaurant throughout the transaction while the gun remained in the car. By itself, this lack of proximity makes it highly unlikely that appellant could have controlled his brother's gun during the sale. Nor does anything in the record suggest that appellant was anywhere near the gun immediately prior to the sale. Contrary to the Government's inaccurate—and to us troubling—assertion, Appellee's Br. at 2–3, nothing in the record suggests that appellant arrived at the restaurant in his brother's car.

Lack of proximity to the gun also distinguishes this case from the cases cited by the Government in which we found constructive possession of guns or drugs by passengers in cars. In all of those cases, the defendants found to have constructively possessed contraband, unlike appellant here, were sitting in the cars containing the contraband when they were stopped by police. Also unlike appellant, most of them had been observed in the cars for some time prior to their arrest. *See Jenkins*, 981 F.2d at 1282–83; *Harrison*, 931 F.2d at 66, 72; *United States v. Hernandez*, 780 F.2d 113, 115–17 (D.C.Cir.1986). In the one case where we singled out a defendant as not constructively possessing contraband discovered in a car occupied by his confederates, we relied in part on the fact that he, like appellant, was not in the vehicle when arrested. *See Jenkins*, 981 F.2d at 1282, 1283–84.

The Government argues that even though appellant was not near his brother's gun at the time of his arrest, we should affirm the district court's finding that appellant could exercise dominion and control over the gun because he and his brother were joint participants in an ongoing criminal enterprise. Although our cases hold that a defendant's proximity to contraband, combined with "evidence linking the accused to an ongoing criminal operation of which ... possession [of the contraband] is a part," may support a finding of constructive possession, *United States v. Staten*, 581 F.2d 878, 885 (D.C.Cir. 1978); *see United States v. Evans*, 888 F.2d 891, 895 (D.C.Cir.1989), *cert. denied*, 494 U.S. 1019, 110 S.Ct. 1325, 108 L.Ed.2d 500 (1990); *see also Williams*, 952 F.2d at 420; *Dunn*, 846 F.2d at 763–64, those cases differ significantly from the case before us. For one thing, all involved defendants arrested in proximity to the contraband. In none of the cases did we hold that participation in an ongoing drug business by itself could support a finding of constructive possession.

In three of the four cases, moreover, we held that participation in a drug distribution operation could support a finding of constructive possession of *drugs*, not of *guns*. Linking participation in an ongoing drug trafficking enterprise to constructive possession of a

gun requires an additional inferential step, one that we think should not be made automatically, i.e., without some additional evidence supporting that step. For example, in the only cited case where we found constructive possession of guns based in part on the defendants' participation in a common drug enterprise, we observed that each defendant had brandished one of the guns during the course of their jointly organized drug transactions. *See Evans,* 888 F.2d at 896. The record in the case before us contains no such evidence. Appellant's brother testified that he did not even acquire the gun until after the completion of three of the four transactions charged in the conspiracy. According to his uncontradicted testimony, he purchased the gun to protect himself from a particular assailant who had attacked him in the past, an assailant having no apparent link to appellant. And nothing in the record establishes that appellant had ever held the gun or, as noted above, that he had arrived at the scene of the fourth sale in the car containing the gun.

Finally, none of the cases cited by the Government concerned the Sentencing Guidelines' safety valve; all addressed the evidentiary requirements for constructive possession under substantive criminal statutes. Although we do not suggest that constructive possession means one thing under the safety valve and something else in substantive criminal law, we do think that the term "possess," as used in the safety valve, must be interpreted and applied in light of the safety valve's clearly stated purpose: to prevent mandatory minimum sentences from causing the "least culpable offenders [to] receive the same sentences as their relatively more culpable counterparts." H.R.REP. No. 103–460, at 4. Leaping automatically from a defendant's participation in an ongoing drug business to a finding that he constructively possessed a weapon owned by another participant—without making any further assessment of the "likelihood that in some discernible fashion the accused had a substantial voice vis-a-vis" the weapon, *Staten,* 581 F.2d at 884; *see also Jenkins,* 981 F.2d at 1283; *United States v. Foster,* 783 F.2d 1087, 1089 (D.C.Cir.1986)—would undermine the purpose of the safety valve by rendering ineligi-

ble for it many of those less culpable participants in drug trafficking enterprises whom Congress intended to relieve from statutory minimum sentences. This statutory objective reinforces our view that finding that a participant in a drug operation constructively possessed someone else's weapon requires some additional evidence linking the participant to the weapon—a link nowhere evident in the record before us.

We vacate appellant's sentence and remand for resentencing in accord with the safety valve.

*So ordered.*