# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued November 6, 2018        Decided May 14, 2019

No. 12-3042

UNITED STATES OF AMERICA,
APPELLEE

v.

HAJI BAGCHO, ALSO KNOWN AS HAJI BAGH CHAGUL, ALSO
KNOWN AS HAJI BAGCHAGUL,
APPELLANT

———

Consolidated with 17-3009, 17-3069

———

Appeals from the United States District Court
for the District of Columbia
(No. 1:06-cr-00334-1)

———

*Sandra G. Roland*, Assistant Federal Public Defender, argued the cause for appellant. With her on the briefs was *A.J. Kramer*, Federal Public Defender. *Tony Axam Jr.*, Assistant Federal Public Defender, entered an appearance.

*Robert A. Parker*, Attorney, U.S. Department of Justice, argued the cause and filed the brief for appellee. *Matthew R. Stiglitz*, Trial Attorney, and *David B. Goodhand* and *Elizabeth Trosman*, Assistant U.S. Attorneys, entered appearances.

Before: ROGERS and MILLETT, *Circuit Judges*, and GINSBURG, *Senior Circuit Judge*.

Opinion for the court by *Circuit Judge* ROGERS.

Concurring opinion by *Circuit Judge* MILLETT.

ROGERS, *Circuit Judge*: In 2012, Haji Bagcho was convicted by a jury of one count of conspiracy to distribute heroin, one count of distributing heroin, and one count of trafficking in narcotics while funding terrorism, and sentenced to life imprisonment. As a result of newly discovered evidence of a *Brady* violation, the district court vacated Bagcho's narcoterrorism conviction and resentenced him to concurrent terms of 300 months on the two remaining convictions. Of Bagcho's three contentions on appeal, only one requires further consideration by the district court.

First, Bagcho contends that by denying his motion for a continuance the district court prevented him from searching the jury selection records in hopes of finding evidence that his jury was not drawn from a fair cross-section of District of Columbia residents in violation of his rights under the Jury Selection and Service Act, 28 U.S.C. §§ 1861–67. We find no abuse of discretion by the district court. The denial did not present a legal bar to prevent Bagcho from accessing these records. The trial record shows that the district court, having stayed voir dire to allow Bagcho's counsel to question the head of the jury office, denied his request for a further stay absent evidence of a "substantial failure to comply" with the Act, 28 U.S.C. §1867(d).

Second, Bagcho contends there was insufficient evidence, even under a preponderance standard, to support a two-point

sentencing enhancement for possession of a firearm during a drug offense. On the current record, we agree that there was insufficient evidence Bagcho constructively possessed the AK-47 found in his absence in his compound where others lived and worked during an April 2006 raid by law enforcement.

Third, Bagcho contends that his sentence was unconstitutional because the district court considered uncharged and acquitted conduct in calculating his base offense level. He acknowledges he cannot prevail under circuit precedent.

Accordingly, we remand the case for resentencing but otherwise affirm the judgment of conviction.

**I.**

Viewing the evidence most favorably to the government as we must, *Jackson v. Virginia*, 443 U.S. 307, 319 (1979), Haji Bagcho ran a large heroin trafficking operation in Afghanistan. In 2005, he came under investigation by the Drug Enforcement Administration ("DEA") and Afghan authorities. During that investigation, Afghan and British forces on April 20, 2006, raided a compound owned by Bagcho in Marco Village in the Nangarhar province of Afghanistan looking for evidence of drug trafficking. The compound comprised several structures including a main residence with ten rooms, a garage, a storage area, and a guesthouse. DEA Agent Gregory Brittain, who was present at the compound as an advisor and mentor, saw Afghan officers bring items out of the compound; one item was "an AK-47 rifle with magazines." Trial Tr. 37 (Feb. 29, 2012). Bagcho was not at the compound at the time of the raid.

As part of the investigation, the DEA enlisted Afghan officials to pose as corrupt police officials, who engaged

Bagcho in discussions about his drug trafficking activities and to whom Bagcho offered bribes in exchange for early warning of raids planned against his operation. Other undercover informants, including Afghan law enforcement and civilians, were engaged to conduct controlled drug buys from Bagcho and to record conversations with Bagcho discussing heroin purchases.

In November 2006, Bagcho was indicted for drug trafficking by a United States federal grand jury. Upon his arrest in May 2009, he was extradited to the United States. A grand jury returned a four-count superseding indictment in January 2010, charging him with (1) conspiracy to distribute one kilogram or more of heroin for import into the United States; (2) distribution of one kilogram or more of heroin on September 25, 2006 for import into the United States; (3) distribution of one kilogram or more of heroin on May 21, 2008 for import into the United States; and (4) distribution of one kilogram or more of heroin while funding terrorism. At trial, the jury deadlocked on all counts, and the district court declared a mistrial.

In February 2012, during voir dire for Bagcho's second trial, his counsel, upon seeing the members of the venire, informed the district court of his concern there were a disproportionately low number of African Americans. Only twelve of the prospective jurors were African American, compared to twenty-six whites and two people of unknown ethnicity. Also twenty-nine of the prospective jurors resided in Northwest D.C., while only three resided in Southeast D.C. Since African Americans represented roughly half of D.C. residents at the time, Bagcho's counsel suggested that African Americans may have been systematically excluded from the jury pool in violation of Bagcho's right to be tried by a jury drawn from a fair cross-section of the community in which the

court is located.  The district court agreed to delay the start of the jury selection to allow Bagcho's counsel to question the head of the jury office, Regina Larry, about the process by which members of the venire had been selected from the broader jury pool of D.C. residents.

Ms. Larry explained that the jury pool is drawn from a master pool of more than 700,000 D.C. residents based on voter, tax, and Department of Motor Vehicles records.  She testified that she created the jury pool for Bagcho's trial by mailing a prescreening form to 1,200 prospective jurors whose names were randomly selected from the master pool.  The jury office then reviewed the responses, disqualifying some residents and granting requests of others to be deferred or excused.  Her testimony revealed no evidence that African Americans or any other group had been systematically excluded from the jury pool.  Bagcho's counsel nonetheless requested "a continuance to go to the jury office to go through the statistics," Tr. 38 (Feb. 22, 2012), explaining he wanted to "take a look at statistics" in order to determine whether there was a "fundamental flaw" in D.C.'s process of summoning potential jurors, *id.* at 40.  The district court denied his request, ruling Bagcho had not met his "burden, as the moving party, [to] demonstrate there was a substantial failure to comply with" the Jury Selection and Service Act.  *Id.* at 49.

The jury found Bagcho guilty on all counts except Count III, and the district court sentenced him to concurrent terms of life imprisonment on each of the three remaining counts.  Upon learning in 2015 by letter from the Justice Department that prior to Bagcho's trial the government had known that one of the government informants who had testified against Bagcho was likely a fabricator, Bagcho moved for a new trial based on newly discovered evidence that a principal witness against him was not credible.  The district court found the government's

failure to disclose the exculpatory evidence constituted a violation under *Brady v. Maryland*, 373 U.S. 83 (1963), and vacated Bagcho's conviction on Count IV (narcoterrorism), which relied exclusively on the informant's testimony and was uncorroborated; by contrast, there was abundant or unscathed evidence to support the convictions on the other two counts. *United States v. Bagcho*, 151 F. Supp. 3d 60 (D.D.C. 2015). The district court denied Bagcho's motion for reconsideration. *United States v. Bagcho*, 227 F. Supp. 3d 28, 31 (D.D.C. 2017).

On September 6, 2017, the district court resentenced Bagcho. Although Counts I and II only involved two kilograms of heroin, the district court calculated a base offense level of 34 for distribution of at least ten but fewer than thirty kilograms of heroin, U.S.S.G. § 2D1.1(c)(3), finding, by a preponderance of the evidence, three transactions: 1.998 kilograms in September 2006, 3.71 kilograms in May 2008, and ten kilograms in July 2008. In addition, the district court imposed a four-point leadership enhancement and a two-point enhancement for firearm possession based on the AK-47 found during the April 2006 raid at Bagcho's compound. With a total offense level of 40, the sentencing range was 292 to 365 months. The district court sentenced Bagcho to 300 months concurrently on each of the two remaining counts.

## II.

The Jury Selection and Service Act of 1968 ("the Act"), 28 U.S.C. §§ 1861–67, governs plans for and the manner of selecting federal grand and petit jurors. It reflects "the policy of the United States that all litigants in Federal courts entitled to trial by jury shall have the right to grand and petit juries selected at random from a fair cross section of the community in the district or division wherein the court convenes." *Id.* § 1861. To challenge compliance with jury selection

procedures, a criminal defendant "may move to dismiss the indictment or stay the proceedings against him on the ground of substantial failure to comply with" the Act "before voir dire begins, or within seven days after the defendant discovered or could have discovered, by the exercise of diligence, the grounds therefor, whichever is earlier," *id.* § 1867(a). The motion must include "a sworn statement of facts which, if true, would constitute a substantial failure to comply with" the Act and be supported by relevant evidence such as the testimony of the jury commission or clerk. *Id.* § 1867(d). If the district court finds there is evidence to indicate there has been "substantial failure to comply" with the Act, then the court "shall stay the proceedings pending the selection of a petit jury in conformity with" the Act. *Id.*

The Act provides that in preparing the motion, the defendant has a right to access "[t]he contents of records or papers used by the jury commission or clerk in connection with the jury selection process." *Id.* § 1867(f). The defendant is entitled "to inspect, reproduce, and copy such records or papers at all reasonable times during the preparation and pendency of such a motion." *Id.* Indeed, the Supreme Court has held that the Act gives a criminal defendant an "essentially unqualified right" to inspect records related to the composition of the jury pool for this trial. *Test v. United States*, 420 U.S. 28, 29–30 (1975). Accordingly in *United States v. Williamson*, 903 F.3d 124, 133–34 (D.C. Cir. 2018), this court remanded the case to allow the defendant to have access to jury commission records pursuant to 28 U.S.C. § 1867(f), finding no basis to require a defendant to submit a sworn statement, much less to plausibly allege a violation of his right to a jury that represents a fair cross section of the community, "when seeking to inspect jury records as an initial step in deciding whether to file [] a motion" under the Act, *id.* at 133.

It is undisputed that Bagcho had an unqualified right to examine the records related to the jury pool for his trial.  The parties disagree, however, on the proper interpretation of the district court's denial of Bagcho's request for a continuance after hearing the testimony of the head of the jury office.  Bagcho maintains that his "request to access records regarding jury selection was unlawfully denied," Appellant's Br. 33, and repeatedly frames the district court's denial as a denial of "access to jury records," *id*. at 34, and of his "discovery request," *id*. at 35, thereby ruling he could not inspect the jury selection records at all.  He seeks a remand of his case to the district court so he may access the jury records in an "attempt to support his challenge to the jury-selection procedures." Reply Br. 7 (quoting *Test*, 420 U.S. at 751).  The government considers Bagcho's characterization of the district court's ruling "factually incorrect," Appellee's Br. 23, and so do we.

The issue before the district court was not whether to let Bagcho (or his counsel) have *access* to the jury records, but whether to further delay the trial proceedings while he examined the jury office records.  Although Bagcho repeatedly states that he asked the district court for access to the jury selection records that it denied, *see* Appellant's Br. 26, 33–35, the record is clear that Bagcho's counsel requested a *continuance* so that he would have time to inspect the records. After hearing testimony from the head of the jury office, counsel requested "a continuance to go to the jury office to go through the statistics" and attempt to show that African-Americans had been systematically excluded from the jury pool.  Tr. 38 (Feb. 22, 2012); *see id.* at 42.  The prosecutor's response was that "there's no reason to give any more continuance in this matter." *Id.* at 46.

The district court explained that Bagcho was entitled under the Act to a stay of the trial proceedings only if he could

"demonstrate there was a substantial failure to comply" with the Act, 28 U.S.C. § 1867(d), and ruled that he "ha[d] not sustained [his] burden." Tr. 49 (Feb. 22, 2012). Stating that it "cannot continue to provide discovery," *id.* at 50, the district court would not delay the trial further so that Bagcho could conduct a potentially lengthy investigation into the District of Columbia's jury selection process. Nothing in the district court's ruling purported to strip Bagcho of his statutory right to access and review the jury records. And if Bagcho's counsel so understood the ruling, he never alerted the district court of its error. The cases on which Bagcho relies involve motions to access records, not motions for a continuance, *e.g.*, *Williamson*, 903 F.3d at 133, and none supports the proposition that Bagcho was entitled to a continuance. As the Seventh Circuit observed in *United States v. Koliboski*, 732 F.2d 1328, 1331 (7th Cir. 1984), "[n]othing in Section 1867, *Test*, or any other case requires a court to stay a proceeding in the absence of any showing that there was substantial failure to comply with the provisions of the Jury Selection and Service Act."

To the extent Bagcho assumes he needed the district court's permission to examine the jury records, his premise is flawed. The Act provides that "[t]he parties in a case shall be allowed to inspect, reproduce, and copy [jury] records or papers at all reasonable times during the preparation and pendency of such motion," 28 U.S.C. § 1867(f). The limit of inspection to "reasonable times" is the only relevant constraint the Act imposes. *Test*, 420 U.S. at 30 & n.4. To obtain access to the jury records, a defendant need only indicate that he is preparing a motion under the Act and request the materials from the jury office. *See United States v. Royal*, 100 F.3d 1019, 1025 (1st Cir. 1996); *United States v. Alden*, 776 F.2d 771, 773 (8th Cir. 1985). Were a defendant or his designated agent to be denied access to jury records as the Act provides, assistance could be sought from the district court; otherwise, no prior

court order is necessary. *United States v. Layton*, 519 F. Supp. 946, 959 (N.D. Cal. 1981).

Nor was the district court's denial of defense counsel's request for a continuance an abuse of discretion. *See United States v. Celis*, 608 F.3d 818, 839 (D.C. Cir. 2010). Having acceded to defense counsel's request to examine the head of the jury office, and no evidence having been produced to show the venire for Bagcho's trial was not selected in accordance with the Act, the district court could properly proceed with voir dire and trial. Congress designed the Act to "reduce the possibility that [] challenge[s] will be used for dilatory purposes." H.R. REP. NO. 90-1076, at 15 (1968); *see* S. REP. NO. 90-891, at 33–34 (1967). Moreover, neither the Act nor the D.C. Jury Selection Plan would prevent a defendant or his counsel from examining the jury selection records at an earlier time, including records reflecting D.C. residents who were called to serve but excused or deferred. That the list of the D.C. residents called and to be present for voir dire was unavailable to counsel and the district court until the day of the trial in Bagcho's case appears to be a result of administrative habit. That habit does not appear to be a best practice because it makes it difficult for defendants to exercise their statutory rights to investigate the jury pool while simultaneously participating in the trial. But Bagcho does not challenge that aspect of the district court's practice, so its consistency with the Jury Selection and Service Act is not before us.

## III.

The Sentencing Guidelines provide that a district court may add two points to the base offense level "[i]f a dangerous weapon (including a firearm) was possessed" during a drug offense. U.S.S.G. § 2D1.1(b)(1). The preponderance-of-the-evidence standard applies at sentencing. *See United States v.*

11

*Fahnbulleh*, 752 F.3d 470, 481 (D.C. Cir. 2014). This court's review is *de novo* for questions of law and clear error for factual findings, giving "'due deference' to the district court's application of the Guidelines to facts." *United States v. McKeever*, 824 F.3d 1113, 1119 (D.C. Cir. 2016) (citations omitted); *see Rita v. United States*, 551 U.S. 338, 361 (2007).

To prove constructive possession, the government must show that "the defendant knew of, and was in a position to exercise dominion and control over" the item in question. *United States v. Dorman*, 860 F.3d 675, 679 (D.C. Cir. 2017) (quoting *United States v. Littlejohn*, 489 F.3d 1335, 1338 (D.C. Cir. 2007)). Thus, this court has explained that "there must be something more than mere presence at the scene of a criminal transaction. There must be some action, some word, or some conduct that links the individual to the [contraband]." *United States v. Pardo*, 636 F.2d 535, 549 (D.C. Cir. 1980). Once constructive possession of a weapon during a drug-trafficking offense has been shown, Application Note 11 of the Guidelines instructs that then "[t]he enhancement should be applied . . . unless it is clearly improbable that the weapon was connected with the offense." U.S.S.G. § 2D1.1, cmt. n.11.

The district court found that a preponderance of the evidence showed Bagcho constructively possessed the AK-47 found at his compound during the April 2006 raid. Although Bagcho was absent from the compound at the time of the raid, the district court was satisfied the government had met its burden because Bagcho "was the owner" of the Marco Village compound and "was in control of the[] premises" when the raid occurred. Tr. 4:5–7 (Sept. 6, 2017). This district court did not elaborate on what it meant by "control" beyond ownership. The district court relied on Application Note 11 in concluding "[t]he enhancement should apply if the weapon is present,

unless it is clearly improbable that the weapon was connected to the offense." *Id.* at 4:18–21.

Bagcho's challenge to the two-point enhancement for the AK-47 does not dispute that the AK-47 was found during the drug-trafficking conspiracy of which he has been convicted. Nor does it turn on suggesting that the AK-47 was not connected to his drug-trafficking activities. Bagcho instead takes issue with the district court's finding that he constructively possessed the gun because he owned and controlled the compound. Neither Bagcho nor the government disputes that *Dorman* correctly describes the elements of constructive possession. Bagcho contends that the government failed to show his constructive possession of the AK-47 by a preponderance because it "proved no more than that a firearm was found somewhere within a jointly occupied residence when [Bagcho] was absent," and this court has required more to find constructive possession. Appellant's Br. 45. The government responds that *Dorman* addressed a substantive count where the government's burden of proof was greater. Appellee's Br. 38.

Notwithstanding the lowered evidentiary burden at sentencing, the government does not suggest that the same elements for constructive possession need not be proved. *See United States v. Cazares*, 121 F.3d 1241, 1245 (9th Cir. 1997); *In re Sealed Case (Sentencing Guidelines' Safety Valve)*, 105 F.3d 1460, 1465 (D.C. Cir. 1997). On the record identified by the district court in finding Bagcho constructively possessed the AK-47 found in the raid, we conclude the district court's finding is clearly erroneous.

This court has upheld convictions of constructive possession where "contraband is found in a home or bedroom where the defendant was the sole occupant." *Dorman*, 860

F.3d at 679 (citing *United States v. Dykes*, 406 F.3d 717, 722 (D.C. Cir. 2005)). That was not the case here; it is undisputed that many people either lived or worked in the compound, *see* Appellant's Br. 38–39; Appellee's Br. 36, and that the compound consisted of multiple buildings and numerous rooms where a firearm might have been located. According to the government's own brief, "Bagcho's compound contained numerous buildings — including a large main residence, a guesthouse with separate spaces for men and women, a garage, and a kitchen-and-storage area — and was very large and very luxurious compared to other homes in the area." Appellee's Br. 4 (internal quotation marks omitted).

The court has also upheld constructive possession where "law enforcement encountered the defendant in close proximity to the contraband" and there is "'evidence of some other factor—including connection with [contraband], proof of motive, a gesture implying control, evasive conduct, or a statement indicating involvement in an enterprise.'" *Dorman*, 860 F.3d at 680 (quoting *United States v. Alexander*, 331 F.3d 116, 127 (D.C. Cir. 2003)). That was not the case here; Bagcho was absent from the compound at the time of the raid. In fact, Bagcho claims that he had moved to a separate residence in Pakistan by that time.

Where a defendant "shares a home or bedroom with other persons," this court has held there was sufficient evidence of constructive possession of contraband found in the shared residence only when there is "additional evidence linking the defendant to the contraband." *Dorman*, 860 F.3d at 679 (citing *United States v. Boyd*, 803 F.3d 690, 693 (D.C. Cir. 2015); *United States v. Walker*, 99 F.3d 439, 441 (D.C. Cir. 1996)). Constructive possession in those circumstances may be shown where the contraband is "kept in plain view," suggesting that the defendant knew about and had access to the contraband. *Id.*

at 681 (citing *United States v. Jenkins*, 928 F.2d 1175, 1179 (D.C. Cir. 1991)). But here, the government presented no evidence about where in the compound the AK-47 was found and provided no evidence linking the weapon to Bagcho beyond the fact that it was found at the compound he owned. The government offers no authority that a defendant's ownership of the property where contraband is found suffices for constructive possession. *Cf. United States v. Lucas*, 67 F.3d 956, 960 (D.C. Cir. 1995).

The district court's application of the enhancement also rested on finding that Bagcho was "in control of the[] premises." Tr. 4:6–7 (Sept. 6, 2017). By "control" the district court apparently meant Bagcho's ownership of the compound in light of his ongoing drug operation there, but the district court did not elaborate. The government maintains that Bagcho's leadership position and the fact that the compound was a site of his heroin trafficking business supports a finding that he knew about the gun and exercised dominion and control over it. This court, like others, has acknowledged that "drugs and guns go together." *United States v. Johnson*, 592 F.3d 164, 169 (D.C. Cir. 2010) (internal quotation marks and citation omitted). But that generalization is only a "plus factor" that supports constructive possession when coupled with other factors such as proximity. *Dorman*, 860 F.3d at 682 (internal quotation marks and citation omitted). The limits of the generalization are illustrated in *In re Sealed Case (Sentencing Guidelines' Safety Valve)*, 105 F.3d 1460 (D.C. Cir. 1997). There, the court held there was insufficient evidence of constructive possession of a gun during a drug transaction where the defendant was not in the car with the gun. The court rejected the proposition that "participation in an ongoing drug business by itself could support a finding of constructive possession," *id.* at 1464, and required some further evidence to support that "additional inferential step, one that we think

should not be made automatically," *id.* at 1464–65. Here neither Bagcho's involvement in drug trafficking nor his ownership of the compound provides sufficient evidence linking him to the AK-47. *See Dorman*, 860 F.3d at 679–80.

To the extent the district court relied on Application Note 11 to justify the enhancement, Tr. 4:14–21 (Sept. 6, 2017), that commentary is inapposite to the constructive possession inquiry because it concerns the connection between the firearm and the drug offense, not the link between the firearm and the defendant. This court has interpreted Application Note 11's instruction that the enhancement "should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense," U.S.S.G. § 2D1.1, cmt. n.11, to stand for the proposition that "[t]he weapon need not be used, but merely present" in order to be considered connected to the offense, *United States v. Mathis*, 216 F.3d 18, 27 (D.C. Cir. 2000); *see United States v. Burke*, 888 F.2d 862, 869 (D.C. Cir. 1989). Similarly, the Sentencing Commission's guidance pairs the firearm's "presen[ce] when the unlawful activity occurred" with proof of "a nexus between the gun and the activity." U.S. Sentencing Commission, *Firearms Primer* 26 (2016). In other words, Application Note 11's directive does not eliminate the requirement to prove constructive possession that there be a sufficient connection between the firearm and Bagcho.

With Bagcho's absence at the time of the raid and no evidence of where the AK-47 was found in the compound, there is insufficient evidence to show he had knowledge of and exercised dominion and control over the particular AK-47 that was recovered, and it was clear error to find Bagcho constructively possessed it. Absent a record to indicate that the district court made findings regarding the other theories based on co-conspirator liability that the government urges in its brief

to this court, *see* Appellee's Br. 40–41, a remand for resentencing is appropriate. *United States v. Childress*, 58 F.3d 693, 726 (D.C. Cir. 1995); *see United States v. Barry*, 938 F.2d 1327, 1337 (D.C. Cir. 1991).

**IV.**

Upon resentencing Bagcho, the district court imposed a base offense level of 34, finding Bagcho engaged in three separate transactions in which he attempted to distribute a total of approximately 15.7 kilograms of heroin: the sale of approximately two kilograms of heroin on September 25, 2006, an offense of which Bagcho was convicted (Count II); the sale of a little under four kilograms of heroin on May 21, 2008, an offense for which Bagcho was acquitted (Count III); and a July 2008 agreement to sell ten kilograms of heroin, an offense with which Bagcho was never charged.

Bagcho contends that the district court violated his Fifth and Sixth Amendments rights under the Constitution by calculating his sentence based on uncharged and acquitted conduct. But he acknowledges that in *United States v. Bell*, 795 F.3d 88, 103 (D.C. Cir. 2015), the court held a sentencing judge may consider uncharged or acquitted conduct proved by a preponderance of the evidence provided the sentence does not exceed the statutory maximum or increase the statutory mandatory minimum. Appellant's Br. 47. He "maintains that *Bell* and similar cases are inconsistent with the Fifth and Sixth Amendments, and he seeks to preserve his claim for future review." *Id*. The concurrent sentences of 300 months did not exceed the statutory maximum of life imprisonment for Counts I and II, nor was the statutory mandatory minimum increased by consideration of the uncharged or acquitted conduct. *See* 21 U.S.C. §§ 959, 960(b)(1), 963. Consequently, the court must

affirm the district court's consideration of uncharged and acquitted conduct in calculating Bagcho's sentence.

Accordingly, we vacate the sentences inasmuch as they rest on the two-point sentencing enhancement for constructive possession of the AK-47, and remand the case to the district court for resentencing; otherwise we affirm the judgment of conviction on Counts I and II.

MILLETT, *Circuit Judge*, concurring: I write separately to express my continued opposition to the use of conduct for which a defendant was acquitted to increase the length of that person's sentence. It stands our criminal justice system on its head to hold that even a single extra day of imprisonment can be imposed for a crime that the jury says the defendant did not commit. *See United States v. Brown*, 892 F.3d 385, 408–409 (D.C. Cir. 2018) (Millett, J., concurring); *United States v. Bell*, 808 F.3d 926, 928–932 (D.C. Cir. 2015) (Millett, J., concurring in the denial of rehearing en banc); *see also id.* at 928 (Kavanaugh, J., concurring) ("Allowing judges to rely on acquitted or uncharged conduct to impose higher sentences than they otherwise would impose seems a dubious infringement of the rights to due process and to a jury trial. If you have a right to have a jury find beyond a reasonable doubt the facts that make you guilty, and if you otherwise would receive, for example, a five-year sentence, why don't you have a right to have a jury find beyond a reasonable doubt the facts that increase that five-year sentence to, say, a 20–year sentence?").

I nonetheless concur because circuit precedent forecloses this panel from righting this grave constitutional wrong. *See United States v. Bell*, 795 F.3d 88, 102–103 (D.C. Cir. 2015). In addition, the district court's consideration of acquitted conduct made no difference to the base offense level in this case. *See* U.S. Sentencing Guidelines Manual § 2D1.1(c)(3) (U.S. Sentencing Comm'n 2016) (providing a base offense level of 34 for 10 to 30 kilograms of heroin). Had the district court declined to consider the four kilograms of heroin that Bagcho was acquitted of distributing, the remaining amount still would have fallen within the range for which a base offense level of 34 applies. *Id*.; *see also Bell*, 808 F.3d at 928 (Kavanaugh, J., concurring) ("[F]ederal district judges have power in individual cases to disclaim reliance on acquitted or uncharged conduct.").